Please call the last case of the morning. 3-15-0139 KVF Quad Corporation v. Workers' Compensation Com'n May it please the Court, Counsel, my name is Chris Crawford and I represent the respondent KVF Quad. I'm the appellant in this case. On June 20th, 2012, Ms. Young suffered an injury while working for KVF Quad. She worked as a shipping and receiving clerk there. This basically requires a check... I actually want to... because you're going to lose a lot of your time. Okay. This woman tripped because her shoelace got caught in the eye of her other shoe, is that correct? Correct. And other than steel-toed shoes, the employer never told the employees what type of shoes to buy? Correct. She bought this particular design and she tripped on her shoelace? Yes, while other designs were available to her. And the Commission found that that was a compensable accident? Yes, it overturned the arbitrator and found that was a compensable accident, saying that basically... Is the risk a neutral risk? The risk is a neutral risk. It's not one incidentally employed, particularly because the risk did not arise from the safety requirements that were required by the employer. As presented at arbitration, there were a number of boots available to her with a number of types of lacing mechanisms. It wasn't the requirement of the steel-toed boot that caused her injury. Rather, it was the lacing mechanism that she personally chose... What is a speed lacing system? I'm trying to visualize this. You don't have the hiking boots. You'll have down at the bottom, you'll have some eyelets that you tie your shoes, and then up toward the top, there are brackets that you cross your laces with and then... They're like hooks. Yeah, eyelets, conventional eyelets. Correct. And then you have metal hooks that... Right. So your position is, she tripped over her own feet? She tripped over her own feet. Tied her shoes properly. She chose the boots. She chose the lacing system and did her in. And you're saying, what's it got to do with the employer? That's correct. And it's no... I mean, there's... The one requirement is, they could even wear footwear with steel-toed. That was the one requirement. I mean, to expand it beyond that, then conceivably, the requirement to have footwear at work, and somebody trips over their own shoes, that becomes a compensable accident for everybody. Were you required to wear footwear at work? Yeah. Because my shoes were kind of spongy that day, and they caused me to trip and fall for no other reason other than wearing the shoes. So the work conditions or activities really had nothing to do with the cause of the fall? No. She was not carrying anything at the time of the fall. She claimed that she had been outside and it was hot, but there was no medical evidence, no history provided to the doctors regarding that. No. That is the basis of my appeal, is that her risk was not incidental to her employment. Therefore, the injury itself did not arise out of employment. She didn't slip on any conditions, I mean, or anything like that? No. No, it was simply, you know, tripping over her own shoelaces. And I know there was also some questions about whether this is a de novo review or a manifest wait review. And the circuit court agreed with me that it was a de novo review, considering that none of the facts were in dispute. Counsel raises there are facts in dispute and essentially says whether this act was incidental to Petitioner's employment, whether her choice to purchase her own boots was a personal choice or one incidental to her employment. I would suggest that that's exactly what we're talking about here. Is the risk incidental to the employment? And that's why it's a de novo review, by your honors, is appropriate in this case. Well, even if you went with a manifest wait? Same. You think the result would be different? Manifest wait by itself puts a little more pressure on me. It's a higher burden. It's a higher burden, but I still think the result would be the same. I mean, we have not adopted the positional risk doctrine in this state, so merely being an injured at work, it's clear that does not involve a compensative accident. The critical inquiry for this court today was the accident incidental to her employment. And had the clothing that she was required to wear had the safety requirement associated with that clothing, caused the accident, then maybe it's compensable. But it didn't here. Take, for instance, a hazmat suit. Let's say somebody gets bungled up in a hazmat suit. Well, why are they wearing a hazmat suit? Because they're probably working with hazmat materials. If the suit itself leads to some sort of injury, then it's incidental to employment, because the safety requirement is a cause of the injury. In this case, that just isn't present here, and that's why I think the commission's decision ought to be overturned. Okay, I think we understand your position. Can I ask you a question? Yes. I'm looking at your brief. Can you tell me the page upon which you submitted the copy of the arbitrator's decision in the appendix? I submitted a copy with – it's in my brief, in AA. A8? Yes, with the – A8. Is it in my appendix? I'm looking for it, and I can't find it. I have a brief without a number. Okay, go ahead. You know, it's not in this copy of the brief that you find it. Judge, I have an extra copy of it. That's all right. Don't worry about it. I'll steal Judge Holder's. He memorizes these things very quickly. That's why we always take his brief, because we've got to remember it. I mean, there is just one argument that I'm making, and I think your honors are clear of it. Are there any other questions? I think we understand it. Okay. All right. Thank you. Thank you, counsel. Counsel, you may respond. Thank you, your honor. May it please the court, Mr. Crawford. My name is Stephen Globus on behalf of the petitioner, Christy Young. Again, don't get nervous about our questions. I've seen it. I've been through it before. First of all, regarding the standard of review, I think the proper standard of review here is the manifest way. I agree we don't have any real factual questions here, but there are different inferences that are being drawn by the parties and by the commission as to the conclusions that those facts can lead to. Specifically, counsel is basically arguing that the facts demonstrate personal risk, and the commission found that the facts demonstrate an employment-related risk. And their decision that this was an employment-related risk is not against the manifest way of the evidence. Now, our issue in the case is whether or not the injury arose out of her employment. For an injury to arise out of the employment, it must be caused by a risk distinctly associated with the employment. Here, there are a number of factors that demonstrate an employment-related risk. First of all, the instrumentality of her injury, the cause of her injury, was her work boot. The work boot was safety equipment which was required by the employer to use. The work boot was approved by the employer. The employer had to review and take a look at this book and approve it, and they did approve it. If she didn't wear this particular work boot or wear the boot, she'd be disciplined. She had to wear that work, otherwise they wouldn't let her in there or she would be subject to discipline. What did that have to do with the laces, though? When she tripped up, the boot didn't cause the problem. Wasn't it the laces that admittedly caused the problem? Well, I think the flaw with that argument is that the boot is a single unit, and I don't think breaking down the boot to its individual components really deals with the reality of the workplace. You need all of the components of the boot for the boot to be effectively used in the workplace. You're saying this is a risk distinctly associated with the employment. You say that she wouldn't have been wearing these boots, but for the requirement that she had to wear work boots at work. But your argument illustrates the danger or the slippery slope nature of but-for causation, because really we're talking about a choice that she made. If the employer had said, no, you have to wear these boots that have this style of hook and eyelet lacing, potentially you have the argument you can make here that this was a risk distinctly associated with her employment. But when you get into the but-for causation, it's very attenuated in terms of the risk analysis. Well, I think simply because she had a choice doesn't negate the connection between the employment and the risk. Here, this was a personal choice to use this particular kind of boot, but it wasn't a reasonable choice. It was a choice that was approved by the employer, and it was a choice performed exclusively for a work-related function. I was thinking of good analogies to use. Let's say we have an employee who's a ditch digger, and they let him choose a shovel. And they say, well, you used the wrong type of shovel. If you would have used a shorter handle shovel, this accident wouldn't have happened. But in that situation, all of the choices are related to a work-related function. Here, the laces have a work-related function. That's to keep her safety boot on so it doesn't slip or so it doesn't fall off. So any time any employer requires a certain work boot, whether it has metal toe, whatever it is, and there's an accident involving the boot itself, it's compensable because it's a work boot. Is that your argument? If there's a risk related to the boot, and the employer requires the employee to wear that boot, and the employee wouldn't wear the boot anywhere else other than the work. It's very interesting that you said that, because this employer never required her to wear that boot. No, they were correct. They only required her to wear a steel-toed boot. She picked out that boot. Yes, that's correct. So now the question becomes, does that distinction remove it from compensability when she trips because of the design of the boot she actually got, as opposed to the safety requirement in the boot that was required by the employer? And as I stated earlier, I think you have to look at the boot as a single unit. It's not dealing in reality to break it down to its individual components and say, well, this part is work-related, this part isn't. Because unless you have all of the parts of the boot, unless you have the steel toe, the metatarsal guard, the sole, the tongue, the upper, and a lacing system to keep the boot on, then there's no benefit to anyone by her using the work boot, because the work boot is going to be likely to fall off if you don't have laces. You don't have a lacing system. Couldn't the same argument be made by an employer that requires all of his employees to wear shoes? If there's a risk caused by shoes, but here there's a specific risk of the hook and the lacing system. Well, I mean, if an employer requires an employee to wear shoes and the employee chooses to wear boots, that he have laces and he speed hooks and turns around and trips on his laces, you could make the same argument you're making today. But for the employer requiring his employees to wear shoes, it wouldn't have happened. I mean, I would understand. This seems like a fraud example, but the employer requires steel-toed shoes. Let's say this was some facility in which they had giant magnets operating, and somehow the convergence of the magnet and the steel toe did something to cause their foot to get caught or something like that, then your argument would be more compelling, because it is the nature of the boot and the employer's requirement itself that played a role. Perhaps an MRI technician required to wear steel-toed shoes. Right. So consider that. Here, you seem to be saying because there's laces on a boot, a boot has to have laces. It's the employer's fault because she got them tangled up. Well, we're not saying it's fault. We're just saying it's a risk related to the employment because she's wearing a work boot because of her employment that she wouldn't have been wearing and didn't wear outside of the employment. So the risk here is exclusively related to her employment because she only wore it at work. Would you ask the question about if the employer requires all employees to wear shoes, wouldn't the same thing apply? Because after all, your argument is before the shoes, the person wouldn't have slipped. Well, here I think there's an elevated risk because there's these hooks involved in this lacing system rather than just regular shoes. But I think if you had an employee that never wore shoes other than at work, then you may say that. But in this case… That would be somewhere in southern Illinois. That is low, low. I didn't say it. Here the employer controlled the type of footwear that she wore. They paid for her footwear. They assented to the footwear that she had. They had requirements for it for safety reasons to prevent hazards. And these were essential functions of her job to walk around and be safe because she's a Victorian. I guess what I'm grasping, in fairness to you, is struggling with is the laces. I understand the work boot concept, yes. But the boot itself didn't cause the fall. It was the laces. Are you saying that the employer required certain kinds of laces to be in this boot? These speed laces? Is that what you're saying? No, but I'm saying we have to judge the boot as a whole. So the whole is nothing more than a sum of its parts. Yes. And the laces are one of the parts. Right. Essential to the function of performing the work-related function of the boot to protect the foot because if you don't have laces on the boot, she's not going to be effectively able to wear the boot because her foot would be shifting or the boot would fall. So there's an argument. So let's say, I think I understand how this accident occurred, being not from North By 80 in Hattie Woods, but similarly designed, is that the lace was very long in the loop of the lace. Okay. Especially on a thin, maybe I don't know who to claim it was, but anyway, they have one size fits all laces, whether it's a small shoe or a large shoe, and the small shoe has a lot of lace and there's a long loop that's down the side of the shoe. And with a speed lace system, if your feet are together, it's possible, or even walking, that it can get caught in that loop, and that's probably the mechanism of the fault. Is that what you're suggesting? I think that's a very logical conclusion, yes, Your Honor. Okay. Let's move it one forward and say we have the eyelet system and no speed lace system, but that her lace becomes untied, which is also a mechanism of fault frequently seen, that you step on the untied lace and you stumble, you fall. Does that change anything at all in your argument? I mean, you would say, well, that's compensable as well, tripping on your own untied lace. That's a hard question. I think in this set of circumstances, it could be because it would be different than what she would be wearing outside of work. Okay. In your example, there is still a risk associated with the employment, because those laces are related to her employment function and her employment duties. Is it the laces in general, or does the speed laces, red herring, what does the speed laces, quote-unquote, have to do with this? Well, that's, speed is, lace part is the hooks. So, you know, like on an ice skate where you hook it around so you can undo it and undo it quicker. And just to be clear, in the evidence, or in evidence at the hearing, were other types of boots that were approved by the employer that did not have the speed lacing system, but were purely the eyelet variety, correct? Yes. There are other alternatives, but this is the one that she chose, yes. Okay. And, you know, all of her choices were related to the work-related function of providing for these boots. Just one other thing that was brought up was whether or not the work activities had nothing to do with her fall. And actually, it did. She was outside working in the heat. She was outside. It was 90 degrees that day. So she was outside, and when she was walking, she was walking inside to get a drink of water because she felt weak and dehydrated. So that's when the fall occurred. So I would say that is an activity related to her employment. And, of course, that is not disputed, right? That's my understanding, yes. Yeah. So as a consequence of these facts, I would ask the court to affirm the decision of the Workers' Compensation Commission. Thank you, counsel. Counsel, you may reply. Could I ask you to address his comparison of digging a ditch, and there are three shovels out there stuck in the ground, different heights, different blades, whatever, and he picks one, and you get some… Stabs on him or something? No, no, he's using them. Okay. He's doing an activity instead of all those works. He's shoveling? He's digging the hole or cleaning out the hole and chooses a short shovel. Let's say, I mean, okay, if he's digging… And that hurts his back. While digging. Yeah, of course, if he chose the long shovel, he wouldn't be bending over. I… Was he wearing shoes? He was wearing shoes. Well, first off, he's the act of digging itself. He has a choice of three shovels. He's digging down, and he's got his shovel in the dirt. Right there, he's doing something incidental to his employment. He's shoveling dirt. He's in the course of just like the claimant is here. Right. The thing of it is that he's doing an activity incidental to his work. That's an apples and oranges comparison. Right. In my respect, I think it is an apples and oranges comparison because we're talking about him actually shoveling and doing the job he's required, regardless of the shovel used. He talked a little bit about let's look at the boot as one unit, not as its individual parts. We don't break that down. I would submit that when it comes to the risk incidental to the employment, we're always breaking down the parts of the injury. Can I ask why did you cite the reeds in your brief? Judge, if you'll notice, I did that gingerly. I understand those decisions do not have precedence. But I thought it instructive. The commission on the one hand says in reeds, because he wore boots outside of work, that's not compensable. But because she didn't wear boots outside of work, it is compensable. You addressed it pretty extensively. So in terms of your ginger, the ginger nature of how you addressed it, I mean, you gave it more airplay than any other case in there. It's a commission decision. It has no precedential value. The thing of it is the commission, I guess, how am I to address the commission's faulty reasoning without showing how it interpreted one set of facts one way and another set of facts the other? In my opinion, it disregarded the risk incidents of employment. You just can't do it. Okay. And I understand that from here on out. In any event, also counsel mentioned that the boot here was the piece of safety equipment. I would submit it was the metatarsal guard. After all, that was the requirement that the employer put forth. I would ask that the commission's decision be reversed. Thank you, counsel, both for your arguments in this matter this morning. We'll take another advisement. This position shall issue. Court will stand in recess until 9 a.m. tomorrow morning.